**ADIA SERVICES, INC. d/b/a Accountants on Call, Respondent,**

v.

**Joseph C. SANSONE, Sr., d/b/a Property Tax Research, Appellant.**

**No. 56963.**

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 14, 1990.

Michael F. Dandino, Chesterfield, for appellant.

Nathan S. Cohen, St. Louis, for respondent.

STEPHAN, Judge.

Appellant–Defendant, Joseph C. Sansone, Sr., doing business as Property Tax Research (PTR), appeals from a judgment of the St. Louis County Circuit Court in favor of respondent-plaintiff in a suit predicated on breach of contract. The trial court awarded respondent $6250.00 for personal services and $750.00 in attorney's fees. We affirm.

Respondent, Adia Services, Inc., doing business as Accountants on Call (AOC), provides temporary employees to clients in need of accounting and bookkeeping services. At the end of each week, the temporaries fill out and sign time cards which reflect the hours they worked on one side and contain an agreement of the conditions for their temporary placement on the other side. The cards are then signed by an agent of the client company. The cards contain a provision for a "conversion" fee which becomes payable to AOC in the event a client hires an AOC temporary to its regular staff. The cards also provide that if the conversion fee is not paid, the client agrees to pay any attorney's fees AOC incurs during the collection process. The language reads in part:

> We (the client) understand that the temporary help supplied by Accounts on Call Personnel Services (AOC) is the result of substantial expense on the part of AOC in terms of time and money spent for the advertising, screening, testing and training of its personnel. Therefore, in consideration for this service, we agree that if any employee named herein is employed by us, our associates or affiliates (either as a salaried employee or as an independent contractor) during a temporary assignment or within one year (1) after the temporary assignment, we will pay to AOC a conversion fee as specified

in the AOC Temporary Services Agreement.

The agreement further provides that:

In the event that we fail to pay the charges of AOC (whether for temporary services or conversion fee) when due, we (the client) shall pay all collection and/or litigation costs plus reasonable attorney's fees.

On March 25, 1988, AOC sent Linda Lehr to PTR where she worked as a temporary for approximately two and a half weeks. As part of the order for the temporary placement, AOC mailed PTR a temporary service agreement establishing the hourly contract rate, the billing procedure, and the procedure for signing the time cards. This agreement also contained provisions for conversion and attorney's fees, but no one signed it on PTR's behalf. During the two and a half week period, PTR's authorized agent, Tom Sweet, signed Ms. Lehr's time cards, and PTR paid AOC the agreed upon hourly fee for the provision of temporary services. AOC, in turn, paid Ms. Lehr. Shortly thereafter, PTR hired Ms. Lehr as a permanent employee. Both AOC and its attorney made demands for payment of the fee. Although one of AOC's agents discussed a discount with Mr. Sweet after PTR hired Ms. Lehr, no fee was ever paid. On May 31, 1989, the trial judge entered judgment in favor of AOC for the conversion and attorney's fees, and PTR appeals. Appellant contends the trial court erred because there is no evidence of a contract between the parties for either fee.

■ In a court-tried case, we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Our authority to set aside a judgment as being against the weight of evidence must be exercised with caution and based upon a firm belief that the judgment is erroneous. *Arnett v. Johnson,* 689

S.W.2d 836, 837 (Mo.App.1985). Further, when we are confronted with a record in which no findings of fact or conclusions of law were filed or requested, as is the case here, all factual issues are deemed to be in accordance with the results reached. *S.G. Adams Printing & Stationery Company v. Central Hardware Company,* 572 S.W.2d 625, 627–28 (Mo.App.1978). We affirm under any reasonable theory and accept as true all the evidence and permissible inferences favorable to the prevailing party, disregarding the contrary evidence. *Id.* at 628.

PTR's first point is that prior to its acceptance of Ms. Lehr as a temporary employee, respondent did not disclose any requirement relating to a conversion fee. PTR asserts that the parties only discussed the job requirements and the hourly rate PTR would pay for such temporary services. PTR further argues that the matter of a conversion fee did not arise until after it hired Ms. Lehr and that the only evidence of an agreement for a conversion fee is Exhibit No. 3, the unexecuted temporary service agreement. Nowhere in its brief does PTR address the time cards signed by its agent, Mr. Sweet. Similarly, in its second point, appellant states that respondent relies on Exhibit No. 3 as the source of the provision for attorney's fees. The basis of respondent's brief, however, is that a contract exists because appellant's agent signed Exhibit No. 2, the time cards. Respondent does acknowledge Exhibit No. 3 but does not base its argument thereon.

■ It is appellant who erroneously relies on plaintiff's Exhibit No. 3, the unexecuted temporary service agreement, for his argument that no contract exists.[1] The contract came into existence when appellant, having received the temporary service agreement, continued to employ Ms. Lehr. When appellant's agent signed the time cards which contained an acceptance of the conversion and attorney's fees as specified in the temporary service agreement, appel-

1. In his brief, appellant claims that respondent sent him Exhibit No. 3 with a letter dated April 13, 1988. From the record however, it is clear that respondent mailed Exhibit No. 3 the day appellant placed the job order, March 25, 1988. The letter of April 13, 1988, is Exhibit No. 6.

lant accepted all the terms and conditions of the agreement relating to the fees even though the agreement itself remained unsigned. A well established tenet of agency law is that an agent of a disclosed principal can bind his principal when the agent acts within the scope of his authority. *Ingram v. Lupo,* 726 S.W.2d 791, 794 (Mo.App. 1987). For these reasons, the judgment of the trial court is supported by substantial evidence, is not against the weight of evidence, and does not erroneously declare or apply the law.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and SIMEONE, Senior Judge, concur.