**In re The ESTATE OF Dorothy Delores RAINES.**

**Dean MULKEY, Petitioner/Appellant,**

**v.**

**John D. MULKEY, Personal Representative, Defendant/Respondent.**

**No. 58040.**

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 8, 1991.

Jeanene Moenckmier, St. Louis, for petitioner/appellant.

Frederica Stratmeyer, St. Louis, for defendant/respondent.

REINHARD, Presiding Judge.

Petitioner appeals from an order by the probate court that determined the ownership of various items of personal property found in the house of the decedent. We affirm.

Dorothy Delores Raines died intestate on January 14, 1989. She is survived by four siblings. On February 15, 1989, the probate court authorized the appointment of her brother John D. Mulkey as personal representative. On April 4, 1989, petitioner, another brother of decedent, filed a claim to recover items of personal property from the residence of decedent. This claim was considered and tried as a petition to determine title to property.[1] Petitioner claimed approximately 100 items; most were various types of antique glassware. He asserted that his sister had allowed him to store glassware at her house, and that he had allowed her to use some of the pieces if she chose. The major item of property in dispute was a set of green "depression" glass dinnerware. A portion of this set had belonged to decedent's grandmother. Petitioner claimed that he had added substantially to this collection over the years by purchasing single items of the same type at auctions and garage sales. At trial, before the court, petitioner and thirteen other witnesses testified in sum that petitioner had collected "depres-

---

1. This change was on the court's own motion. Our research suggests that the court intended to conform this claim to the requirements of 473.- 340, RSMo 1986 even though this statute was not mentioned.

sion" and other types of glassware and identified various items in dispute as belonging to petitioner. In addition to himself, the personal representative called as witnesses petitioner and two others. During this testimony some items were conceded to petitioner and, with respect to some others, a different history of ownership from that suggested by petitioner emerged. At the end of the hearing the trial court said the following:

Well; I—there's a lot of items here, and I've pretty well made up my mind on almost all of these items. I was going to render my decision right now. However, on further thought, seeing how this is such a hotly contested matter among the family members—apparently there's a lot of sentimental value attached to this stuff. I'm not persuaded that any of it has any great monetary value. I thought perhaps maybe now that everybody has heard the evidence. All the witnesses have testified. They've all testified under oath. I'm going to have to decide who to believe and who not to believe. And your attorneys can advise you on the different Rules of Evidence about burdens of proof and so forth. I think maybe what I'll do is I'll just hold up on this a day or two. And maybe-maybe—I think everybody would be a lot better off if they can agree as to what belongs to whom, rather than have me make a decision on it. I'll make the decision if I have to and I'll make it right away. But I think everybody in the long run might be a lot better off and a lot happier if you can agree on this among yourselves.

The siblings, other than petitioner, then met and compiled a list of items that they agreed belonged to petitioner or those they were willing to relinquish as a compromise. All or part of 50 items were included as was a substantial portion of the green "depression" glass. The list was given to the court and to opposing counsel. The petitioner refused the compromise and the personal representative asked that the trial court reach its decision on the evidence presented. On November 3, 1989, the trial court issued its order apportioning the disputed items exactly as suggested in the settlement offer. This action by the trial court led to the present appeal by petitioner.

Petitioner alleges that the trial court's order was not supported by substantial evidence and was against the weight of the evidence.[2] In addition, petitioner alleges that the "trier-of-fact abdicated its duty ... to enter its judgment after weighing all the evidence produced at trial."

As this is a court tried case our review is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo banc 1976). Thus, we will affirm unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. In addition, we note that no findings of fact or conclusions of law were requested of, or made by, the trial court. We will therefore assume that all fact issues were resolved in accordance with the result reached. *Estate of Strauss v. Schaeffer,* 781 S.W.2d 274, 275 (Mo.App. 1989).

We have reviewed the evidence presented to the trial court and have concluded that it supports the decision made by the court. While some conflicts in testimony did exist, resolution of these conflicts was the task of the trial court and we defer to its opportunity to judge the credibility of the witnesses. *Alice v. Ronald,* 683 S.W.2d 307, 310 (Mo.App.1984), Rule 73.01(c)(2). The fact that the court's order followed the prepared settlement does not automatically render it suspect. Because we find that the result reached is supported by the evidence, we affirm the trial court's action.

Judgment affirmed.

STEPHAN and CRANE, JJ., concur.

---

**2.** Petitioner in his point on appeal does not direct us to any evidence about a specific piece of disputed property that supports his assertion.