In the Matter of Raymond George PARKHURST, Deceased.

Wendy R. TINNON, Appellant,

v.

M. Louise PARKHURST, Personal Representative, and James Tweedy, Personal Representative Ad Litem, Respondents.

No. 59463.

Missouri Court of Appeals, Eastern District, Southern Division.

Jan. 7, 1992.

Richey, Price, Rice, Spaeth & Heisserer, Joseph P. Rice, Cape Girardeau, for appellant.

Downs, Johnson & Montgomery, Gerald H. Johnson, Cape Girardeau, for respondents.

AHRENS, Judge.

Creditor and claimant Wendy Rae Tinnon appeals from orders of the Probate Division of the Circuit Court of Cape Girardeau County. The orders award the surviving spouse, M. Louise Parkhurst, a 1986 Cadillac, clothing, and household goods as exempt property; one year's support of $12,000.00; and a homestead allowance of $7,500.00. We affirm in part and reverse in part.

Decedent Raymond George Parkhurst died testate on February 15, 1990, survived by his spouse, M. Louise Parkhurst, and two emancipated daughters. On February 23, 1990, Mr. Parkhurst's Last Will and Testament, naming Mrs. Parkhurst as personal representative, was admitted to probate; Mrs. Parkhurst was appointed personal representative. Decedent and Mrs. Parkhurst had been married for seventeen years at the date of decedent's death, although an action for the dissolution of their marriage had been tried and was pending issuance of a final decree at the time of Mr. Parkhurst's death. On motion by the surviving spouse, the dissolution action was dismissed prior to judgment.[1] The assets of the decedent's estate totalled $14,931.71, and consisted of a 1986 Cadillac, valued at $10,000.00, and $4,931.71 in bank accounts.

There were two claims filed against the estate: (1) a claim for $1,596.56 by the attorney who represented the decedent in the dissolution action and a related adult abuse proceeding instituted by Mrs. Parkhurst; and (2) a claim for $4,796.28 by claimant Wendy Rae Tinnon for payment of the decedent's funeral bill and related expenses.

On August 24, 1990, Mrs. Parkhurst filed an Application for Delivery of Exempt Property and Making of Family Allowances, in which she requested the 1986 Cadillac, all of the decedent's household goods and clothing, and one year's support. Mrs. Parkhurst also applied for a homestead allowance of $7,500.00. Prior to hearing those applications, the trial court appointed a personal representative ad litem to represent the interests of the estate.

At trial, the evidence showed that as a result of Mr. Parkhurst's death, Mrs. Parkhurst had received: (1) a house held in joint tenancy[2] and valued at approximately $60,000.00; (2) a Buick valued at approximately $12,000.00; and (3) Union Electric stock worth approximately $5,800.00. There was no debt against the house, and it was in need of some repair. Real estate taxes

---

1. The daughters of decedent attempted to appeal from the trial court's order dismissing the pending action for dissolution of marriage. This court dismissed for lack of jurisdiction, noting that husband's death prior to the entry of a decree caused the immediate abatement and final termination of the dissolution proceeding. *Parkhurst v. Parkhurst,* 799 S.W.2d 159 (Mo. App.1990).

2. Although the record indicates only that certain property was held in joint ownership, we note that such ownership of property, real or personal, creates a presumption of tenancy by the entirety. *Holt v. Myers,* 494 S.W.2d 430, 444 (Mo.App.1973).

were approximately $450.00. Further, Mrs. Parkhurst owed $200.00 in credit card bills and owed a $10,750.00 debt to her sister. Mrs. Parkhurst claimed as her property a $30,000.00 certificate of deposit (CD) which she testified decedent took out of her and decedent's joint names and put into decedent's own name without her knowledge. On appeal, Mrs. Parkhurst claims the CD was paid to claimant, Wendy R. Tinnon, upon the death of decedent. Although the transcript does not support that contention, there is no substantial evidence in the record that Mrs. Parkhurst had access to the CD.

Mr. John Tinnon, husband of claimant Wendy Tinnon, testified that he and his wife voluntarily paid the decedent's funeral expenses, and that Mrs. Parkhurst neither asked them to pay said expenses, nor offered to pay them herself. Mrs. Parkhurst testified she did not ask anyone to pay the funeral bill or take care of the funeral arrangements. When the coroner asked Mrs. Parkhurst who was going to make arrangements, she told him she would "give his [the decedent's] daughter the opportunity. If she doesn't wish to, I shall." Mrs. Parkhurst further testified that she did not believe in funerals, that she and the decedent had decided to be cremated, and that Mrs. Tinnon had taken the body of the decedent to the Chicago area for burial.

Mrs. Parkhurst first testified her living expenses would exceed $1,000.00 per month, but later stated they would "approach" $1,000.00 monthly. In 1989, the year prior to Mr. Parkhurst's death, Mrs. Parkhurst earned $5,055.00 in gross income from part-time work at Sears. She also received approximately $360.00 per month in Social Security. In 1990, her anticipated gross income from Sears was $6,840.00, and she expected to receive Social Security of $360.00 per month prior to Mr. Parkhurst's death and $640.00 per month thereafter. In addition, Mrs. Parkhurst earned interest income; the amount was not introduced into evidence. She had no other retirement income or pension plans, but

had medical insurance through Sears at a cost of $27.00 per month, with a $250.00 deductible and 80% coinsurance. Mrs. Parkhurst was sixty-three years old at the time of the hearing, and suffered from arthritis.

On November 30, 1990, the trial court entered an order granting Mrs. Parkhurst a homestead allowance of $7,500.00. On December 3, 1990, the trial court ordered delivery to Mrs. Parkhurst of exempt property consisting of the 1986 Cadillac, household goods, and wearing apparel. Further, the court fixed Mrs. Parkhurst's one-year maintenance allowance at $12,000.00. The court-appointed personal representative ad litem made no objection to Mrs. Parkhurst's applications for allowances, and he has filed no appeal of the trial court's orders. Mrs. Tinnon appeals.

▮ We review the probate division orders as equitable proceedings and must affirm them on appeal unless there is no substantial evidence to support them or they erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *In re Pauli's Estate*, 613 S.W.2d 467, 468 (Mo.App.1981).

▮ For purposes of our analysis, we consider appellant's points in reverse order. First, appellant claims the trial court erred in ordering delivery of the 1986 Cadillac to Mrs. Parkhurst as exempt property because "respondent had already elected to keep a jointly titled 1989 Buick which met the legislative purpose for providing an exemption for one motor vehicle." [3] Appellant's point ignores the clear, mandatory language of the exemption statute, which provides that the surviving spouse is "entitled *absolutely* to the following property of the estate ... one automobile or other passenger motor vehicle with its means of propulsion." § 474.250 RSMo 1986 (emphasis added). Nothing in the statute indicates the exemption is somehow limited or restricted if the surviving spouse owns other property individually or acquires jointly held property upon the decedent's death. The exemption speaks directly to an abso-

---

**3.** Although included in the order from which appellant appeals, appellant makes no claim of error with respect to the award of clothing and household goods.

lute right to specific property of the estate. Mrs. Parkhurst's right to a statutory exemption of one automobile was not extinguished by her election to keep the auto she owned jointly with the decedent. The trial court properly awarded Mrs. Parkhurst the 1986 Cadillac. Point denied.

In her next point, appellant claims the $12,000.00 family support allowance for one year "was unreasonable in light of the respondent's previous standard of living, the financial condition of the decedent's estate and because the aggregate value of all money and property passing to the surviving spouse under Section 474.163 RSMo was clearly sufficient to meet her reasonable needs." The pertinent provisions of § 474.260.1 RSMo 1986 include: "In addition to the right to homestead allowance and exempt property, the surviving spouse is entitled to a reasonable allowance in money out of the estate for his maintenance during the period of one year after the death of the spouse, according to his previous standard of living, taking into account the condition of the estate of the deceased spouse. The court shall consider the aggregate value of all money and property passing to the surviving spouse or unmarried minor children by means described in section 474.163.... The allowance authorized by this law is exempt from all claims."

Appellant contends the $12,000.00 allowance is against the manifest weight of the evidence, and that the trial court failed to consider the following statutory factors: respondent's previous standard of living, the condition of the estate, and other assets received by respondent.

With respect to respondent's previous standard of living, appellant cites the estrangement of Mr. and Mrs. Parkhurst at the time of decedent's death, and the fact that Mr. Parkhurst died only two days after the dissolution hearing. Although appellant argues that the parties were living in separate households at the time of Mr. Parkhurst's death, no evidence in the record supports the allegation. The evidence shows a marriage of approximately seventeen years. Although a dissolution proceeding was pending, there is nothing in the record to show any orders or agreements with respect to the maintenance and support of respondent, a sixty-three year-old, arthritic woman who relies upon part-time employment and Social Security for her primary means of support. The uncontroverted testimony indicates that Mrs. Parkhurst's living expenses were approximately $1,000.00 per month, the amount of the support allowance the trial court ordered.

Next, appellant argues the allowance is excessive in light of the condition of the estate, which had a total value of $14,931.71 and unpaid claims totalling $6,392.84. Appellant acknowledges that insufficiency of estate assets should not automatically preclude a family allowance, and that where warranted, the family allowance should have priority over creditor's claims. However, appellant asserts that here, the existence of outstanding claims and evidence that respondent's standard of living can be maintained without a support allowance justify a subordination of respondent's claims to those of the estate creditors.

Section 474.260 requires the trial court in making a support allowance to consider claims of creditors in its consideration of the condition of the estate. However, nothing in this case indicates the trial court failed to consider all factors relevant to the allowance. Further, the primary purpose of § 474.260 is to provide a reasonable allowance for the maintenance of the surviving spouse (and unmarried minor children) for a period of one year after the death of the other spouse and until some permanent provision can be made for their support. § 474.260; *In re Estate of Guthland*, 438 S.W.2d 12, 17 (Mo.App.1969). In our view, the allowance's exemption from all claims indicates a legislative intent to give priority to the allowance in cases such as this, where the assets are inadequate to fully provide for both the needs of the surviving spouse and those of the estate creditors.

The final factor cited by appellant in challenging the trial court's family support allowance is the receipt by respondent of

certain property that passed to respondent upon the decedent's death. Although Mrs. Parkhurst received property worth approximately $100,000.00, the bulk of the property consists of the marital residence, which is not a liquid asset available for use in support of respondent. Respondent sold the 1989 Buick she had owned jointly with decedent, but she owed the proceeds to her sister. Further, there was no evidence that respondent had control over the $30,000.00 CD that she testified decedent had taken out of her and decedent's joint names. The estate's only liquid assets consisted of $5,800.00 in Union Electric stock. Under these circumstances, we find no abuse of discretion in the trial court's allowance.[4] Point denied.

In her final point, appellant challenges the trial court's grant of a homestead allowance of $7,500.00. Appellant argues that § 474.290 limits the homestead allowance to a maximum of fifty percent of the value of the estate, exclusive of exempt property and family allowance, and that the trial court's award exceeded that percentage. We agree.

Section 474.290 provides for a homestead allowance to the surviving spouse or unmarried minor children "of an amount not exceeding fifty percent of the value of the estate, exclusive of exempt property, and the allowance made under section 474.260, but in no case shall the allowance exceed seven thousand five hundred dollars." Thus, any exempt property and the one-year family support allowance are first deducted from the value of the total estate; the homestead allowance is then limited to fifty percent of the remaining value, and in no case is to exceed $7,500.00.

Here, the exempt property and one-year support allowance exhausted the estate. Accordingly, there were no remaining assets from which a homestead allowance could be ordered. Absent the discovery of additional assets and the filing of an amended inventory which would justify reconsideration of the homestead allowance,

the trial court's allowance of $7,500.00 was erroneous.

We affirm the trial court's order granting respondent a $12,000.00 support allowance and certain exempt property consisting of clothing, household goods, and a 1986 Cadillac. We reverse the court's order granting respondent a homestead allowance of $7,500.00. Costs are taxed against appellant.

CARL R. GAERTNER, P.J., and KAROHL, J., concur.

---

4. We note that after delivery of the exempt property to respondent, the value of the estate is $4,931.71. Appellant's claim that the support

award is excessive is therefore moot as to any amount in excess of that figure.